*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-AA-1481

BURNICE STACKHOUSE, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

Petition for Review of an Order of the District of
Columbia Department of Employment Services
Compensation Review Board
(CRB-108-13)

(Submitted January 13, 2015                    Decided March 19, 2015)

*Matthew Peffer* was on the brief for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief for respondent.

Before EASTERLY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Burnice Stackhouse seeks review of an order denying him workers' compensation benefits for the period between a scheduled medical examination that he missed and a later medical examination that he attended. The Compensation Review Board ("CRB") decided that Mr. Stackhouse was not entitled to benefits during that period. We affirm.

**I.**

The following facts are undisputed in this court. Mr. Stackhouse was a sanitation worker for the District of Columbia Department of Public Works ("DPW"). In 1993, Mr. Stackhouse injured his left ankle and his back in a work-related incident. He has not thereafter returned to work and, with some interruptions not relevant here, has been receiving workers' compensation benefits since the incident.

In August 2012, Mr. Stackhouse was notified by regular and certified mail that, if he wished to continue to receive benefits, he was required to attend a medical examination on September 6, 2012. A copy of the notice was also faxed to Mr. Stackhouse's attorney. Mr. Stackhouse did not claim the certified letter, which was returned to DPW. The letter sent by regular mail was not returned. Mr. Stackhouse did not attend the examination, so DPW notified him that it had suspended his benefits. After receiving the notification that his benefits had been suspended, Mr. Stackhouse contacted DPW, and another medical examination was scheduled for October 11, 2012. Mr. Stackhouse attended that examination, and DPW reinstated his benefits beginning on October 11, 2012.

Mr. Stackhouse filed a claim seeking benefits for the period from September 6, 2012, to October 11, 2012. After a formal hearing, an Administrative Law Judge ("ALJ") found that Mr. Stackhouse received notice of the first examination. Mr. Stackhouse has not challenged that ruling. The ALJ also concluded that Mr. Stackhouse was not entitled to receive retroactive benefits for the period of suspension. Mr. Stackhouse requested review of that conclusion, and the CRB affirmed. Specifically, the CRB interpreted the applicable statute and regulation to preclude retroactive payment of benefits suspended due to a claimant's failure to submit to a medical evaluation. *See* D.C. Code § 1-623.23 (d) (2012 Repl.) (right to compensation suspended until claimant submits to medical examination; period of refusal deducted from period for which compensation is payable); 7 DCMR § 124.9 (2015) (benefits reinstated as of date of compliance).

## II.

Mr. Stackhouse argues that the CRB erred in finding that he was not entitled to retroactive payment of the suspended benefits. We must defer to the CRB's reasonable interpretation of statutes that the CRB is charged with administering. *See, e.g.*, *Pierce v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*,

882 A.2d 199, 205 (D.C. 2005). We find the CRB's interpretation of the applicable provisions to be reasonable.

Section 1-623.23 of the D.C. Code requires public employees receiving workers' compensation benefits to submit to reasonable physical examinations by a physician chosen by the District. D.C. Code § 1-623.23 (a). "If an employee refuses to submit to . . . examination, his or her right to compensation . . . is suspended until the refusal . . . stops." D.C. Code § 1-623.23 (d). If an employee initially refuses but then does submit, "the period of the refusal . . . is deducted from the period for which compensation is payable to the employee." *Id.*

In concluding that Mr. Stackhouse was not entitled to retroactive benefits, the CRB focused primarily on the language in D.C. Code § 1-623.23 (d) providing that the period of suspension "is deducted from the period for which compensation is payable to the employee." The CRB interpreted that language to imply that the right to benefits was lost during the period of refusal, not that the right was retroactively reinstated once the period of refusal ended. The CRB found support for this interpretation in 7 DCMR § 124.9, which provides that "benefits shall be reinstated as of the date of compliance," but makes no mention of retroactive payments.

We conclude that the CRB reasonably interpreted the language at issue. We note, moreover, that the federal Employees' Compensation Appeals Board ("ECAB") has interpreted identical language in the Federal Employees' Compensation Act to preclude retroactive payment of workers' compensation benefits that were suspended for failure to submit to a medical examination. *See Saviolidis*, 37 E.C.A.B. 174, 174-76 (1985) (interpreting 5 U.S.C. § 8123 (d) (2012)). As the ECAB explained, "The plain meaning of this [provision] is that compensation for the period during which an employee refuses to undergo a reasonably requested medical examination by the Office is forfeited." *Id.* at 175. We find the ECAB's interpretation of an identical federal statute persuasive. *Cf., e.g.*, *Williams v. United States*, 878 A.2d 477, 481 (D.C. 2005) (when interpreting local statute, "this court will look to federal cases interpreting" nearly identical federal statute).

Mr. Stackhouse argues that the CRB's interpretation is unreasonable, making two principal points. First, he argues that the word "suspended" necessarily implies a temporary interruption or deferral of payment of benefits, not a permanent loss of the suspended payments. Even if Mr. Stackhouse were correct on that point, however, section 1-623.23 (d) does not merely provide for the

suspension of the right to payment of benefits. In a separate sentence that does not use the word "suspended," section 1-623.23 (d) states that the period of refusal is to be deducted from the period for which compensation is payable. In light of that sentence, the CRB reasonably interpreted section 1-623.23 (d) as a whole to foreclose retroactive payment of suspended benefits. *See generally, e.g.*, *S.M. v. R.M.*, 92 A.3d 1128, 1137 n.11 (D.C. 2014) ("a statute should be read as a harmonious whole") (internal quotation marks omitted).

Second, Mr. Stackhouse argues that precluding retroactive payment of suspended benefits would be inconsistent with the "humanitarian purpose" of the workers' compensation statutes to provide needed benefits to employees injured in work-related accidents. *See McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1197 (D.C. 2008) ("This court follows the principle that workers' compensation statutes should be liberally construed to achieve their humanitarian purpose.") (internal quotation marks omitted). More specifically, Mr. Stackhouse argues that he was always medically eligible to receive benefits and that all of his benefits should therefore be restored to him. Mr. Stackhouse makes a reasonable point. The District of Columbia responds, however, that providing for forfeiture of suspended benefits serves important purposes, including giving employees an incentive to comply with the obligation to submit to

reasonable medical examinations and permitting timely determinations of eligibility to receive benefits. *Cf. Brown v. District of Columbia Dep't of Emp't Servs.*, 83 A.3d 739, 749-50 (D.C. 2014) (in upholding CRB's interpretation of statute providing for suspension of workers' compensation benefits to private-sector employees who refuse to cooperate with vocational rehabilitation, court notes that CRB's interpretation "is consistent with the evident statutory goal of providing a powerful incentive to employees to cooperate"). The CRB's interpretation reflects a reasonable resolution of these conflicting considerations. *See generally Mason v. District of Columbia Dep't of Emp't Servs.*, 562 A.2d 644, 648 (D.C. 1989) ("when both the [agency] and the petitioners make cogent though conflicting arguments concerning the proper construction of the statute . . . we defer to [the] agency's interpretation") (internal quotation marks omitted).

## III.

Mr. Stackhouse also argues that the failure to provide him retroactive benefits constitutes a taking without just compensation in violation of the Fifth Amendment. Mr. Stackhouse did not make this argument to either the ALJ or the CRB.

> Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and

> administrative response before judicial review. Our consideration of a claim raised for the first time on appeal deprives the administrative agency of its right to consider the matter, make a ruling, and state the reasons for its action. Therefore, in the absence of exceptional circumstances, we will not entertain a claim that was not raised before the agency.

*Hill v. District of Columbia Dep't of Emp't Servs.*, 717 A.2d 909, 912 (D.C. 1998). Although Mr. Stackhouse does not identify any circumstance warranting an exception to this general principle, a party can be excused for failing to raise a claim before an administrative agency if the agency lacked authority to decide the claim. *See generally, e.g.*, *District of Columbia Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Dep't Labor Comm.*, 997 A.2d 65, 82 (D.C. 2010). Moreover, this court has suggested that there may be limits on the authority of administrative agencies to resolve certain constitutional issues. *Cf., e.g.*, *Rhema Christian Ctr. v. District of Columbia Bd. of Zoning Adjustment*, 515 A.2d 189, 197 (D.C. 1986) (expressing doubt as to whether Board of Zoning Adjustment could rule on constitutionality of zoning regulations). It is not clear that Mr. Stackhouse's takings claim would have been outside the CRB's authority to decide. *Cf. Horne v. Department of Agric.*, 133 S. Ct. 2053, 2063-64 (2013) (takings claim properly raised before agency). We need not decide these issues. Even assuming that Mr. Stackhouse's takings claim is properly presented in this court, Mr. Stackhouse cites no authority suggesting that an agency commits an unconstitutional taking by denying benefits to a claimant who fails to comply with

reasonable procedural requirements. Nor do we view Mr. Stackhouse's takings claim as creating "serious constitutional doubt" warranting rejection of the CRB's interpretation of the provisions at issue. *See generally, e.g.*, *Mack v. United States*, 6 A.3d 1224, 1233-34 (D.C. 2010).

The order of the CRB is therefore

*Affirmed.*